# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| JERRY WILSON, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>OFFICER JOHN FERGUSON, DEPUTY )<br>LANCE JONES, OFFICER MATTHEW )<br>TILL, individually, )<br>    Defendants. ) | CIVIL ACTION: 18-00205-KD-B |

## ORDER

This is a Section 1983 action involving two claims: false arrest and excessive force. The defendants, all of whom were law enforcement officials at the time of their encounter with Plaintiff Jerry Wilson, have moved for summary judgment on the basis of qualified immunity.[1] As set out more fully below, Deputies Matthew Till and Lance Jones' motion for summary judgment is due to be denied and Officer John Ferguson's motion is due to be granted in part and denied in part.

**I.     PROCEDURAL BACKGROUND**

Jerry Wilson initiated a two-count complaint in the Circuit Court of Wilcox County, Alabama on March 27, 2018 against City of Camden Officer John Ferguson, Wilcox County Sheriff's Deputy Lance Jones and Wilcox County Sheriff's Deputy Matthew Till. (Doc. 1-1). Wilson's complaint was brought pursuant to 42 U.S.C. § 1983 for violations of the Fourth Amendment. Count I alleges Ferguson used excessive force. Count II alleges a false arrest and detention claim against all defendants. (Id. at 7). Defendants removed this case to this Court on the basis of federal question jurisdiction.

---

[1] Officer Ferguson and Deputies Till and Jones filed separate motions for summary judgment. This order addresses and resolves both motions.

## II.     OVERVIEW OF THE LAW

### a. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  Defendants, as the parties seeking summary judgment, bear the initial responsibility of informing the district court of the basis for their motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  If the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof—that a genuine dispute of material fact exists—the moving party is entitled to summary judgment.  Celotex, 477 U.S. at 323.  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter…the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998–999 (11th Cir. 1992) (internal citations and quotations omitted).

Summary judgment may nonetheless be appropriate in certain scenarios even with conflicting versions of events.  The Supreme Court has instructed that "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). When the non-movant's

assertion is "so utterly discredited" by the record, no "genuine" dispute of material fact exists sufficient to prompt an inference on behalf of the non-movant. Id. at 381.

Finally, when qualified immunity is raised as a reason justifying summary judgment, the Eleventh Circuit has stated district courts should "approach the facts from the plaintiff's perspective because '[t]he issues . . . here concern not which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of clearly established law.'" McCullough v. Antolini, 559 F.3d 1201, 1202 (11th Cir. 2009) (quoting Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002)).

### b. Qualified Immunity

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). If the defendants demonstrate that they acted within the scope of their professional authority when the allegedly wrongful actions occurred, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." Lee, 284 F.3d at 1194. To assess entitlement to qualified immunity, a court must determine: (1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated the plaintiff's constitutional rights; and (2) whether the right at issue was clearly established at the time of the constitutional violation. Harlow, 457 U.S. at 818. It is within a court's discretion "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2001).

### c. False Arrest/Detention

"[A]n arrest without probable cause to believe a crime had been committed violate[s] the Fourth Amendment." Von Stein v. Brescher, 904 F.2d 572, 579 (11th Cir. 1990). "But where probable cause supports an arrest, it acts as 'an absolute bar to a section 1983 action for false arrest.'" Carter v. Butts Cty., Ga., 821 F.3d 1310, 1319 (11th Cir. 2016) (quoting Kingsland v. City of Miami, 382 F.3d 1220, 1226 (11th Cir. 2004)). "[A]rguable probable cause is all that is needed to establish the qualified immunity defense when probable cause is an essential element of the constitutional claim." Pruitt v. Gillespie, 625 F. App'x 374, 376 (11th Cir. 2015) (unpublished). Arguable probable cause exists where reasonable officers in the same circumstances and with the same knowledge as the officer could have believed that probable cause existed. Brown v. City of Huntsville, Ala., 608 F.3d 724, 734 (11th Cir. 2010). It "depends on the elements of the alleged crime and the operative fact pattern. Showing arguable probable cause does not, however, require proving every element of a crime." Id. at 735 (internal citations omitted). "[W]hat counts for qualified immunity purposes relating to probable cause to arrest is the information known to the defendant officers or officials at the time of their conduct, not the facts known to the plaintiff then or those known to a court later." Jones v. Cannon, 174 F.3d 1271, 1283 (11th Cir. 1999). "The standard is an objective one and does not include an inquiry in to the officer's subjective intent or beliefs." Brown, 608 F.3d at 735.

Ferguson contends his interaction with Wilson did not constitute an arrest;[2] instead he argues it amounted to a Terry-style[3] investigatory stop or detention. (Doc. 16 at 10). This distinction is important because the standard required to receive qualified immunity arising from

---

[2] The Eleventh Circuit has outlined three types of police-citizen encounters: "(1) police-citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full-scale arrests." United States v. Perez, 443 F.3d 772, 777 (11th Cir. 2006).
[3] Terry v. Ohio, 392 U.S. 1 (1968).

4

a Terry stop is significantly less burdensome than when the interaction amounts to an arrest. "[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Jackson v. Sauls, 206 F.3d 1156, 1165 (11th Cir. 2000) (quoting Illinois v. Wardlow, 528 U.S. 119, 123 (2000)). "A law enforcement official who reasonably but mistakenly concludes that reasonable suspicion is present is still entitled to qualified immunity. When an officer asserts qualified immunity, the issue is not whether reasonable suspicion existed in fact, but whether the officer had 'arguable' reasonable suspicion to support an investigatory stop." Jackson, 206 F.3d at 1165–66. "In undertaking the arguable reasonable suspicion inquiry, this [c]ourt must examine the totality of the circumstances to determine whether an officer had a 'particularized and objective' basis to support his suspicion." Whittier v. Kobayashi, 581 F.3d 1304, 1309 (11th Cir. 2009) (citing Brent v. Ashley, 247 F.3d 1294, 1303 (11th Cir. 2001)) (alteration supplied).

### d. Excessive Force

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham v. Connor, 490 U.S. 386, 396 (1989). "While some force in effecting an arrest is thus allowed, '[d]etermining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" Vinyard, 311 F.3d at 1347 (quoting Lee, 284 F.3d at 1197).

Any use of force must be reasonable. Graham, 490 at 395. "[C]laims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its

5

'reasonableness' standard[.]" Id. "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them[.]" Graham, 490 U.S. at 397. The reasonableness of a particular use of force is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396. The reasonableness test is not mechanically applied, but instead depends on the facts and circumstances of each particular case. The Eleventh Circuit's analysis of this question includes the following Graham factors: (1) the severity of the crime; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. See, e.g., Brown, 608 F.3d at 738 (citing the Graham factors). Other factors relevant to the resolution include "the need for the application of force, the relationship between the need and the amount of force used, and the extent of the injury inflicted." Saunders v. Duke, 766 F.3d 1262, 1267 (11th Cir. 2014) (citation omitted, alteration accepted).

### III.    FACTS[4]

The facts, viewed most favorable to Wilson, reveal the following: Late one night in March 2016, Wilson and his wife, Destine, went to Travis' General Store in Camden, Alabama to purchase food for their return trip to Huntsville, Alabama. (Doc. 16-1 at 8/Depo. 47:8-9). Large crowds often gathered at Travis', and a number of crimes had occurred on the property. (Doc. 20-1 at ¶ 7). That night, several law enforcement vehicles surrounded the store, with lights illuminated. (Id.). Wilson, who is paralyzed from his waist down, sat in the back seat of a Tahoe SUV, on its driver's side. (Doc. 16-1 at 10/Depo. 56:8-9). He sat in the backseat because he was going to

---

[4] "[W]hat is considered to be 'facts' at the summary judgment stage may not turn out to be the actual facts if the case goes to trial, but those are the facts at this stage of the proceeding for summary judgment purposes." Cottrell v. Caldwell, 85 F.3d 1480, 1486 (11th Cir. 1996).

stretch out on the ride home. (Id./Depo. 56:11-13). Wilson's wheelchair was stored in the cargo space of the Tahoe. (Id./Depo. 56:14-16).

After parking, Destine got out of the Tahoe and went into the store. It was while she was in the store that the defendants approached Wilson's vehicle. (Id./Depo. 54:13-16). The first defendant who spoke to Wilson was Ferguson. (Id. at 11/Depo. 57:1-3). According to Wilson's version of the events, which the Court must accept, Wilson did not have any interaction with the officers prior to Ferguson opening the door. (Id./Depo. 57:22-58:1). According to Wilson, he neither "smart[ed] off" to the officers nor "jaw[ed] back and forth with them[.]" (Id. at 12/Depo. 62:11-15).[5] Before the defendants approached, Wilson did not yell at them. (Id. at 11/Depo. 59:11-15).

Ferguson spoke to Wilson first. Ferguson approached the door and asked for Wilson's name and social security number. (Id./Depo. 57:4-7). He also inquired as to whether Wilson possessed any drugs or weapons. (Id./Depo. 57:8-10). Wilson answered Ferguson's questions. Thereafter, Ferguson opened the door. (Id./Depo. 57:4-15). After a back and forth, Ferguson said "boy, get out of the truck." (Id./Depo. 60:18). Because Wilson is paralyzed, he could not exit without falling to the ground. (Id. at 12/Depo. 61:2-3). As a result, he "was just holding [himself] tightly." (Id./Depo. 61:3-4). Ferguson placed a handcuff on Wilson's left wrist. (Id./Depo. 61:7-8). Later, Wilson gave Ferguson his right hand and Ferguson placed the other cuff around it. (Doc. 16-3 at 8/Depo. 31:00-32:1). Wilson told Ferguson that he needed his chair out of the back of the Tahoe.

---

[5] This version differs from Ferguson's account. According to Ferguson, Wilson yelled at the defendants twice before he approached Wilson's vehicle. (Doc. 16-3 at 4). Officer Wilson testified in his deposition that Wilson was yelling at the officers to turn off the blue emergency lights on their cars. (Id.).

7

The handcuffs were removed to allow Wilson to place himself in his wheelchair. (Doc. 16-1 at 12/Depo. 62:18-19). Afterwards, Wilson "push[ed] [himself]" to the police cruiser. (Id./Depo. 62:23). On Wilson's way to Jones' police cruiser, according to Wilson, Jones was behind him with Jones' hand on Wilson's wheelchair. (Id./Depo. 63:20-22). According to Wilson, somebody (presumably Jones) pushed his wheelchair over. In the security video, his wheelchair can be seen toppling backwards. After helping Wilson upright his wheelchair, Jones placed Wilson in his police cruiser with handcuffs. (Id. at 13/Depo. 69:2-4). Wilson rode in Jones' car to the detention center in Camden. (Id./Depo. 69:15-16). But instead of being taken into the jail to be booked, Jones dropped Wilson off in the parking lot. Destine, who drove separately, picked up Wilson. (Id./Depo. 70:17). After the encounter, Destine drove Wilson to her mother's home in Camden. (Id./Depo. 70:20-21). He subsequently went to the hospital, where staff took several X-rays. (Doc. 16-1 at 5/Depo. 18:16-18).

There is video evidence from the night of the incident. One video, captured by a body camera Till wore, begins only after law enforcement attempts to place or has placed a handcuff on Wilson. It depicts Ferguson attempting to place the other handcuff on Wilson's right wrist. The other video is security camera footage from Travis' store. The security footage does not have audio and lacks a direct view of the Tahoe's seat where Wilson sat.

## IV. ANALYSIS

### a. False Arrest

Wilson alleges Ferguson, Till, and Jones falsely arrested him in violation of the Fourth Amendment. The Court reviews Till and Jones' argument with respect to false arrest separate from Ferguson's. Till and Jones appear to concede the analysis should be focused on whether arguable

probable cause existed to arrest Wilson. However, Ferguson argues he did not arrest Wilson when he placed the handcuffs on him and instead his actions constituted a Terry detention.

### i. Till and Jones

Both Till and Jones seek to avail themselves of qualified immunity. Specifically, they contend that at all material times both performed their duties as deputy sheriffs and did not violate Wilson's clearly established constitutional rights. Both concede that the Fourth Amendment guarantees the right to be free from unreasonable seizures.

Till and Jones argue that arguable probable cause existed to justify Wilson's arrest for disorderly conduct. (Doc. 20 at 10-11). The Alabama Criminal Code provides that

> (a) A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he or she does any of the following:
> (1) Engages in fighting or in violent tumultuous or threatening behavior.
> (2) Makes unreasonable noise.
> (3) In a public place uses abusive or obscene language or makes an obscene gesture.
> (4) Without lawful authority, disturbs any lawful assembly or meeting of persons.
> (5) Obstructs vehicular or pedestrian traffic, or a transportation facility.
> (6) Congregates with other person in a public place and refuses to comply with a lawful order of law enforcement to disperse.

Ala. Code § 13A-11-7(a). In support, Till and Jones cite their own declarations as well as video footage. Both Till and Jones argue that despite the contrasting version of events, the videos "clearly establish that [Wilson] was speaking loudly from his vehicle at law enforcement officers and that [he] refused to comply with instructions from the Defendants." (Doc. 20 at 14). Because of this "indisputable factual record[,]" Till and Jones assert they are entitled to summary judgment. (Id.). As the facts recounted above demonstrate, Wilson testified in his deposition that he did not yell at the police officers. (Doc. 16-1 at 11/Depo. 59:11-15). He also testified that he had *no interaction* with "the officers" prior to Ferguson opening the Tahoe's door. (Id./Depo. 57:22-58:1).

9

Because Till and Jones' account of Wilson's actions differ from the account Wilson and his wife offer, the question presented is whether the available video evidence "blatantly contradict[s,]" Scott v. Harris, 550 U.S. at 380, the Wilsons' accounts, such "that no reasonable jury could believe it . . ." Id. It does not. The security footage does not contradict Wilson's material deposition testimony because it lacks audio. Moreover, the footage is too distant and the perspective too obstructed by the vehicle's doors to suggest his conduct constituted arguable probable cause to arrest him for disorderly conduct. The bodycam video captured events only after Ferguson placed a handcuff on Wilson (and shortly before Till told Wilson that he was being arrested for disorderly conduct for the way in which he spoke to law enforcement).  It does not capture Wilson yelling at officers prior to Ferguson opening the Tahoe door.

In their reply brief, Till and Jones argue Wilson's actions also constituted arguable probable cause to arrest him for resisting arrest. (See Doc. 25 at 4). In Alabama, "A person commits the crime of resisting arrest if he intentionally prevents or attempts to prevent a peace officer from affecting a lawful arrest of himself or of another person." Ala. Code § 13A-10-41. Till and Jones argued in their motion for summary judgment brief that "[they] had probable cause to arrest [Wilson] for a variety of offenses[,]" without specifying offenses other than disorderly conduct. (Doc. 20 at 12). Only in their reply brief did the resisting arrest offense receive mention. Nevertheless, because this alleged crime "arose from [Wilson's] conduct during the arrest for disorderly conduct, . . . the resisting arrest charge depends in part on the validity of [his] arrest for disorderly conduct." Brown, 608 F.3d at 735. See also Exford v. City of Montgomery, 887 F. Supp. 2d 1210, 1224 (M.D. Ala. 2012) ("Resisting arrest quite obviously could not serve as probable cause for initiating [plaintiff's] arrest—that would put the cart before the horse."). Arguable probable cause for resisting arrest depends on whether Till and Jones had arguable probable cause

10

to arrest Wilson for disorderly conduct. This is because Alabama's resisting arrest statute requires the arrest be a lawful one. Ala. Code § 13A-10-41 ("A person commits the crime of resisting arrest if he intentionally prevents or attempts to prevent a peace officer from affecting a *lawful arrest* of himself . . .") (emphasis added). See also Summers v. Martin, 2013 WL 6499366, at *10 (N.D. Ala. Dec. 11, 2013) ("a lawful arrest is the prerequisite for the crime of resisting arrest"). Because it cannot be said as a matter of law that arguable probable cause existed to arrest Wilson for disorderly conduct, no reasonable officer would believe arguable probable cause existed to arrest Wilson for resisting arrest.

Because a genuine dispute of material fact exists regarding whether Till and Jones had arguable probable cause to arrest Wilson, summary judgment on the basis of qualified immunity is **DENIED**.

### ii. Ferguson

Ferguson's motion for summary judgment on the false arrest claim is based on two arguments. First, the fact that, according to Ferguson, bodycam video "clearly shows that [Wilson's] arrest was made by Deputy Till." (Doc. 16 at 9). "Because [Wilson] cannot show that [Ferguson] made the arrest, and obviously had no control over [deputy sheriffs] employed by the County, Officer Ferguson is entitled to summary judgment as to [Wilson's] false arrest claim." (Doc. 16 at 9).

Second, Ferguson argues that his encounter with Wilson prior to the arrest was lawful because Ferguson had reasonable suspicion under Terry to justify the investigatory stop. To accurately assess which type of police-citizen encounter occurred,

> [F]our nonexclusive factors . . . aid . . . in differentiating between a Terry stop and an arrest: (1) the law enforcement purpose served by the detention; (2) the diligence with which the officers pursued the investigation; (3) the scope and intrusiveness of the investigation; and (4) the duration of the detention. [United States v. Hardy, 855 F.2d 753, 759 (11th Cir. 1988)]. In balancing these factors, [courts] are to focus

11

> on "whether the police diligently pursued a means of investigation likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant."

United States v. Street, 472 F.3d 1298, 1306 (11th Cir. 2006) (quoting United States v. Acosta, 363 F.3d 1141, 1147 (11th Cir. 2004)). After Ferguson secured the handcuffs on Wilson's wrists,[6] Till announced that Wilson was going to jail. Because Wilson does not appear to contest that Ferguson's interaction amounts to an investigative stop and not an arrest, the Court will analyze whether arguable reasonable suspicion supported the investigative stop. See Jackson, 206 F.3d at 1166 ("When an officer asserts qualified immunity, the issue is not whether reasonable suspicion existed in fact, but whether the officer had 'arguable' reasonable suspicion to support an investigatory stop.").

Because the Court must accept Wilson's account as true (absent blatantly contradictory evidence), it cannot be said as a matter of law that arguable reasonable suspicion supported Ferguson's investigatory stop. Wilson testified in his deposition that he did not yell at the defendants. (Doc. 16-1 at 11/Depo. 59:11-15). He also testified that he had no interaction with "the officers" prior to Ferguson opening the door. (Id./Depo. 57:22-58:1). This testimony is not blatantly contradicted by the bodycam footage. The bodycam video submitted to the Court begins after the door was opened and Ferguson can be seen attempting to handcuff Wilson. Sitting quietly in one's vehicle parked in a store's parking lot cannot, without more, be said to constitute arguable reasonable suspicion to detain one for disorderly conduct. A genuine dispute of material fact precludes summary judgment. Therefore, Ferguson's motion with respect to the false arrest/detention claim is **DENIED**.

---

[6] Even by placing Wilson in handcuffs, Ferguson did not necessarily effectuate an arrest. See Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1305–06 (11th Cir. 2006) ("[D]uring an investigatory stop, an officer can still handcuff a detainee when the officer reasonably believes that the detainee presents a potential threat to safety.").

### b. Excessive Force

Wilson's complaint alleges Ferguson violated his constitutional right to be free from excessive force. The excessive force claim does not include Till and Jones. (See Doc. 1-1 at 7). Wilson testified in his deposition that, as a result of the handcuffing and wheelchair fall; he suffered "injury to [his] back and injury to [his] wrist because of the handcuffs and the injury when [he] fell out the chair and bumped [his] head in the custody of Jones." (Doc. 16-1 at 5/Depo. 20:15-18). He testified that Ferguson "yank[ed] and pull[ed] and tugg[ed]" on Wilson's arms. (Id./Depo. 20:12-15). Wilson testified the pulling made him feel like Ferguson was "trying to break [his] arm." (Doc. 16-1 at 12/Depo. 62:10). This resulted in broken skin and swelling that took a long time to heal. (Doc. 16-1 at 5-6/Depo. 20:20-21:16).

In his motion for summary judgment, Ferguson argues (1) the force was de minimis, which without more, does not support a claim for excessive force, (Doc. 16 at 15-16), (2) that Wilson's excessive force claim is subsumed by his false arrest/unlawful seizure, and (3) Ferguson is entitled to qualified immunity.

The Court agrees that Ferguson is entitled to qualified immunity as to this claim. The Court initially observes that by Wilson's own admission, Ferguson was involved in the handcuffing but only Jones was involved in the wheelchair incident. (See Doc. 16-1 at 12/Depo. 63:23-64:4). Moreover, video evidence clearly shows Ferguson was not in Wilson's vicinity when his wheelchair toppled backwards. Thus, summary judgment is due to be granted as to the excessive force claim related to the wheelchair incident.

The Court begins by addressing why Wilson's excessive force claim is not entirely subsumed within his false arrest claim.[7] Ferguson argues that "Because [Wilson's] excessive force

---

[7] Resolution of whether the force was de minimis and therefore not actionable, see Vinyard, 311 F.3d at 1348 n.13 (collecting cases), depends on whether Ferguson was entitled to detain Wilson. Reese v.

13

claim is based only on the fact that he was handcuffed, not that an unreasonable quantum of force was used under the circumstances, [Wilson] fails to present a discrete excessive force claim and that claim is due to be dismissed as a matter of law." (Doc. 16 at 17). Under Eleventh Circuit law "a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim." Bashir v. Rockdale Cty., Ga., 445 F.3d 1323, 1331 (11th Cir. 2006) (quoting Jackson, 206 F.3d at 1171). Therefore, if Wilson's excessive force claim derived solely from his argument that the use of *any* force in this context was excessive, the excessive force claim would be subsumed. See id. at 1332 ("[W]here an excessive force claim is predicated solely on allegations the arresting officer lacked the power to make an arrest, the excessive force claim is entirely derivative of, and is subsumed within, the unlawful arrest claim."). But Wilson's excessive force claim is *not* "predicated solely on allegations the arresting officer lacked the power to make an arrest . . . ." Id. Indeed, Wilson alleges that excessive force was used to handcuff him, resulting in injury. Insofar as Wilson's excessive force claim is based solely on his contention that the detention was unlawful and therefore any amount of force was excessive, that prong of the claim is subsumed by Wilson's false arrest/detention claim.[8] With respect to the genuine excessive force claim not subsumed,[9] the Court proceeds to determine whether Ferguson is entitled to summary judgment on qualified immunity grounds.[10] That is, assuming Ferguson's

---

Herbert, 527 F.3d 1253, 1272 (11th Cir. 2008) (quoting Zivojinovich v. Barner, 2008 WL 1805821, at *11 (11th Cir. Apr. 23, 2008)) ("[E]ven *de minimis* force will violate the Fourth Amendment if the officer is not entitled to arrest or detain the suspect.").

[8] See Turner v. Jones, 415 F. App'x 196, 201 (11th Cir. 2011) ("Accordingly, to the extent [the plaintiff] asserts that the force used during his arrest was excessive because the arrest was not supported by probable cause, this claim is part of the unlawful arrest claim. It is not a separate and discrete claim.").

[9] "A genuine 'excessive force' claim relates to the manner in which an arrest was carried out, independent of whether law enforcement had the power to arrest." Hadley v. Gutierrez, 526 F.3d 1324, 1329 (11th Cir. 2008).

[10] In Turner, 415 F. App'x at 201, the Eleventh Circuit held that genuine disputes of material fact existed and denied summary judgment as to the plaintiff's false arrest claim but proceeded to address the plaintiff's other "discrete" excessive force claim. The Court follows suit.

14

detention of Wilson *was* lawful, is Ferguson nevertheless entitled to qualified immunity as to Wilson's genuine excessive force claim?

Ferguson was clearly engaged in discretionary authority when he detained Wilson, and Wilson does not dispute that. As a result, the Court must analyze the two-prong Saucier inquiry: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001). And if so, was the right clearly established? Id. The evidence, viewed in the light most favorable to Wilson, establishes that the force Ferguson employed was not unreasonable and did not violate the Fourth Amendment.

Although the crime of disorderly conduct is not severe,[11] Wilson's unsecured right wrist posed a threat to officer safety. Ferguson was clearly reluctant to give his right wrist to Ferguson while Ferguson stood beside the door. His unsecured right hand posed a threat to officer safety because the officers did not know whether Wilson was armed. Any tugging or pulling Ferguson did occurred prior to securing Wilson's right wrist in the handcuffs. Moreover, Wilson can clearly be seen refusing to comply with Ferguson's order to allow him to handcuff Wilson's right wrist. No reasonable factfinder could determine that Ferguson's actions were disproportionate to the need to secure Wilson's right wrist. The video evidence unequivocally depicts Ferguson struggling to get Wilson's right wrist for more than ten seconds.

Finally, the injuries Wilson suffered do not alter the above analysis. Wilson testified that his back was hurting from being tugged and pulled, (Doc. 16-1 at 13/Depo. 72:10-12), and that he suffered broken skin and swelling that took a long time to heal. (Id. at 5-6/Depo. 20:20-21:16).

---

[11] See Durruthy v. Pastor, 351 F.3d 1080, 1094 (11th Cir. 2003) (emphasis added) (stating Eleventh Circuit jurisprudence makes "clear that some use of force by a police officer when making a custodial arrest is necessary and altogether lawful, *regardless of the severity of the alleged offense*[]").

These injuries are not extensive, and militate against a finding that the force was unreasonable.[12] Taken together, the evidence, even viewed in Wilson's favor, demonstrates Ferguson did not apply force that deprived Wilson of his constitutional right to be free from the use of excessive force. As a result, Ferguson is entitled to qualified immunity on the part of Wilson's excessive force claim that is not subsumed in the unlawful detention claim. Ferguson's motion for summary judgment on this claim is **GRANTED**.

V.     **CONCLUSION**

Genuine issues of material fact preclude summary judgment as it relates to Wilson's false arrest and detention claim against all defendants. Summary judgment is granted on the basis of qualified immunity to Ferguson on part of the excessive force claim not subsumed in the unlawful arrest/detention claim because Ferguson's actions did not violate Wilson's constitutional right.

Accordingly, it is ordered that:

1. Till and Jones' motion for summary judgment (Doc. 19) is **DENIED**.
2. Ferguson's motion for summary judgment (Doc. 15) is **GRANTED** in part and **DENIED** in part.

**DONE** the 21st day of March 2019.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[12] No X-rays, medical reports, or other medical documentation taken or created following the incident was submitted.